UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT FREY,
    Plaintiff,

v.                                                                           Case No. 20-C-1155

VILLAGE OF HARTLAND,
LEAGUE OF WISCONSIN MUNICIPALITIES
MUTUAL INSURANCE,
AUTO-OWNERS INSURANCE COMPANY, and
DEF INSURANCE COMPANY,
    Defendants,
and

DAVID DEAN,
    Defendant and Third-Party Plaintiff,

v.

TIMOTHY FREY,
    Third-Party Defendant.
_____

## DECISION AND ORDER

The plaintiff, Robert Frey, alleges that one of the defendants, David Dean, while acting under color of state law as a firefighter for the Village of Hartland, Wisconsin, entered onto his property and physically assaulted him. Frey brings this action against Dean, the Village of Hartland, and their insurers under 42 U.S.C. § 1983 and state law. Frey's homeowner's insurer, defendant Auto-Owners Insurance Company, filed a counterclaim and cross-claims seeking a declaration as to its coverage obligations. Before me now is Auto-Owners' motion to bifurcate the coverage issues from the merits of the plaintiff's claims and to stay further litigation on the merits pending resolution of the coverage issues.

## I. BACKGROUND

According to the allegations of the second amended complaint, Dean was employed by the Village as the chief of its fire department. On the evening of June 18, 2017, Dean, who may have been intoxicated, was at the fire department's headquarters and observed Frey drive by in his truck. Dean and Frey had "prior negative interactions," and Dean did not like the way that Frey drove past the department. Second Am. Compl. ¶ 13. Dean took an unmarked vehicle from the fire department to Frey's home, which was located only a short distance down the road from the fire department. Dean drove the vehicle onto Frey's property and blocked Frey's driveway with the vehicle. He began yelling obscenities at Frey, told him to stop "messing with his men," and threatened to issue Frey tickets or take him to jail. *Id.* ¶ 14. Frey responded by telling Dean to leave his property, but Dean did not go. Instead, he tried to prevent Frey from leaving his vehicle. When Frey forced his way out of the vehicle, Dean "attacked, assaulted, battered, grabbed, struck, choked, and injured" Frey. *Id.* ¶ 15. Dean also broke Frey's eyeglasses.[1]

Frey alleges that Dean's attack caused injuries to his head, neck, arms, elbow, wrist, thumb, fingers, ankle, foot, low back, and coccyx. In this lawsuit, he seeks compensation for those injuries, as well as compensation for his damaged property and the mental harm the attack allegedly caused him. He alleges that Dean's actions amounted to the use of excessive force, in violation of the Fourth Amendment, and that

---

[1] Dean disputes Frey's version of these events and contends that Frey was the aggressor. He filed a counterclaim against Frey alleging negligence and assault and battery. However, for purposes of the present motion, I focus on Frey's allegations.

he committed battery under state law. Frey also brings an alternative claim for negligence. Finally, he alleges that Dean's actions amounted to trespass, false imprisonment, and an unreasonable seizure in violation of the Fourth Amendment.

In addition to suing Dean and the Village, Frey sues their insurers under Wisconsin's direct-action statute. One of those insurers is Auto-Owners Insurance Company, which issued a homeowner's policy to Dean that was in force at the time of the incident. Auto-Owners filed a counterclaim and cross-claims in which it seeks a declaration as to its coverage obligations. Auto-Owners contends that its policy does not cover the claims alleged in the complaint because the policy contains an exclusion for intentional acts. However, Auto-Owners has hired counsel to defend Dean on the merits of Frey's claims pending a judicial determination that its policy has not been triggered. Auto-Owners now moves for an order bifurcating the coverage issue from the merits of Frey's claims and staying litigation on the merits until the coverage issue has been resolved.

## II. DISCUSSION

A policy of liability insurance ordinarily obligates the insurer to both defend and indemnify its insured. *Marks v. Houston Cas. Co.*, 369 Wis.2d 547, 570 (2016). These obligations are referred to as the insurer's "duty to defend" and "duty to indemnify." *Id.* The duty to defend requires the insurer to pay for the defense of its insured in a lawsuit alleging claims falling within the scope of the policy. *Id.* The duty to indemnify, in turn, requires the insurer to pay any judgments entered against the insured in connection with a covered claim. *Id.*

3

Under Wisconsin law, an insurer's duty to defend is triggered when it learns of a suit against its insured alleging a claim that, if proven, would result in covered liability. *Id.* at 571. If an insurer is confident that the suit does not allege a covered claim, it may deny coverage and refuse to defend the insured. *See Choinsky v. Emp'rs Ins. Co. of Wausau*, 390 Wis.2d 209, 226–27 (2020). However, an insurer does so at its own peril, for if the insured pays for its own defense and a court eventually determines that the suit alleged covered liability, the insurer will be deemed to have breached its duty to defend. *Id.* at 227. The insurer will then be "on the hook for all damages that result from that breach of duty," including the amount of the judgment or settlement against the insured plus interest and the insured's costs and attorneys' fees incurred in defending the suit. *Maxwell v. Hartford Union High Sch. Dist.*, 341 Wis. 2d 238, 262 (2012).

The Wisconsin Supreme Court has advised insurers that, to avoid being deemed in breach of the duty to defend, they should use one of several procedures that the court has identified for obtaining coverage determinations. *See, e.g., Choinsky*, 390 Wis. 2d at 224–25. Each procedure requires the insurer to defend its insured on the merits of the underlying claim until the coverage issue has been resolved. *See id.* However, an insurer that wishes to avoid paying for a defense pending the coverage determination may "[f]ile a motion with the [trial] court requesting a bifurcated trial on coverage and liability and a stay of the proceedings on liability until coverage is determined." *Id.* at 225. If the trial court grants the motion, the liability case is halted, and neither the insurer nor the insured incurs attorneys' fees defending the underlying suit while the coverage issue is pending. *Id.* However, the trial court does not have to grant the motion, and if it does not, the insured must continue defending the insured. *Id.* at 226.

In the present case, Auto-Owners has followed the Wisconsin Supreme Court's advice. Although it disputes that its policy covers the claims alleged by Frey, it has hired counsel to defend Dean rather than deny coverage and leave Dean to defend himself. Further, to avoid having to pay for Dean's entire defense while coverage is disputed, Auto-Owners has filed a motion to bifurcate the trial on coverage and liability and to stay the proceedings on liability until coverage is determined. Although the Wisconsin bifurcate-and-stay procedure is not controlling in federal court, *see Wallace v. McGlothan*, 606 F.3d 410, 419 (7th Cir. 2010) ("a federal court sitting in diversity is bound by state substantive law but applies its own procedural rules"), the Federal Rules of Civil Procedure grant district courts discretion to order separate trials on different issues, *see* R. 42(b), and to order that discovery be conducted in phases or be limited to or focused on particular issues, *see* R. 26(f)(3). In deciding whether to order separate trials or to direct that discovery be conducted in phases, I balance considerations of convenience, economy, expedition, and prejudice. *See Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

In its motion, Auto-Owners does not precisely explain what it intends to do if I grant its request to bifurcate and stay. Although Auto-Owners states that its exclusion for intentional acts "may" apply, *see* Br. in Supp. at 2–3, it does not explain how it intends to resolve this issue. However, it appears that Auto-Owners intends to take at least some discovery, for in its reply brief it contends that "[c]overage depositions of the parties will uncover the facts more comprehensively." Reply Br. at 3. But Auto-Owners does not identify any way in which these "coverage depositions" would be different from "liability depositions." And it seems to me that any deposition aimed at determining whether the intentional-acts exclusion applies will substantially overlap with liability issues, namely,

5

whether Dean committed battery or another intentional tort. Thus, it appears that Auto-Owners' request to bifurcate and stay will not further judicial economy but will instead require the court and the parties to litigate this case twice: once to determine coverage, and a second time to determine liability. This puts an unfair burden on the other parties that is not justified by Auto-Owners' desire to avoid having to either pay for Dean's defense pending the coverage determination or risk breaching its duty to defend. Moreover, I do not see how a stay of merits discovery would prevent Auto-Owners from having to pay for Dean's defense during the proposed coverage phase of this case. The coverage depositions will inevitably involve issues that will be central to Dean's liability—such as whether he acted intentionally—so Dean's defense counsel will likely need to prepare for and attend those depositions, and Auto-Owners will have to pay defense counsel for that time even though proceedings on liability have been stayed.

My decision on Auto-Owners' motion might have been different had Auto-Owners proposed to resolve the coverage issue under the "four corners" rule, which states that whether a pleading triggers the insurer's duty to defend is determined by comparing the pleading's allegations to the language in the insurance policy. *See Choinsky*, 390 Wis. 2d at 223. In that case, I could have stayed all discovery while Auto-Owners filed a motion for summary judgment based on the rule. This would have prevented any party from incurring defense costs relating to liability issues while coverage issues were pending. I also might have granted the motion had Auto-Owners proposed to take targeted discovery on a coverage issue that did not overlap with the merits. But because the discovery Auto-Owners seeks would substantially overlap with the merits, using the

6

bifurcate-and-stay procedure here would not promote judicial economy. Thus, Auto-Owners' motion will be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Auto-Owners' motion to bifurcate and stay (ECF No. 50) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of March, 2021.

s/Lynn Adelman_____<br>
LYNN ADELMAN<br>
United States District Judge